1   JORDAN ETH (BAR NO. 121617)
    JEth@mofo.com
2   JUDSON E. LOBDELL (BAR NO. 146041)
    JLobdell@mofo.com
3   MARK R.S. FOSTER (BAR NO. 223682)
    MFoster@mofo.com
4   MORRISON & FOERSTER LLP
    425 Market Street
5   San Francisco, California  94105
    Telephone:    415-268-7000
6   Facsimile:    415-268-7522

7   ANNA ERICKSON WHITE (BAR NO. 161385)
    AWhite@mofo.com
8   MORRISON & FOERSTER LLP
    755 Page Mill Road
9   Palo Alto, California 94304
    Telephone:    650-813-5600
10  Facsimile:    650-494-0792

11  Attorneys for Defendants YAHOO! INC., TERRY S. SEMEL,
    SUSAN L. DECKER, DANIEL L. ROSENSWEIG, and
12  FARZAD NAZEM

13                  UNITED STATES DISTRICT COURT

14                NORTHERN DISTRICT OF CALIFORNIA

15                      OAKLAND DIVISION

16  | IN RE: YAHOO! INC. | CLASS ACTION |
|---|---|
17  | ELLEN ROSENTHAL BRODSKY, on Behalf of Herself and All Others Similarly Situated, | Case No. CV-08-2150-CW |
18  | | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO** |
19  |                            Plaintiffs,<br>            v. | **DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT; SUPPORTING** |
20  | YAHOO! INC., TERRY S. SEMEL, SUSAN L. DECKER, FARZAD NAZEM, and DANIEL | **MEMORANDUM OF POINTS AND AUTHORITIES** |
21  | ROSENSWEIG, | |
22  |                            Defendants.<br>. | Hearing:      September 18, 2008<br>Time:         2:00 p.m. |
23  | | Courtroom: 2, 4th Floor<br>Judge:       Hon. Claudia Wilken |
24  | | |
25  | | |
26  | This Document Relates To:  All Actions | |

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 2

I.      THE PARTIES ....................................................................................................... 2

II.     PLAINTIFFS' ALLEGATIONS ........................................................................... 2

        A.      Yahoo!'s Search Marketing Business ...................................................... 2

        B.      Securities Fraud Allegations .................................................................... 3

                1.      Financial reporting ....................................................................... 3

                        a.      revenue recognition ........................................................... 3

                        b.      reserves .............................................................................. 4

                2.      Defendants' optimistic statements about Yahoo! ....................... 4

                3.      Project Panama ............................................................................. 5

ARGUMENT ..................................................................................................................... 6

I.      PLAINTIFFS MUST SATISFY "EXACTING PLEADING REQUIREMENTS." .......... 6

II.     PLAINTIFFS FAIL TO STATE A SECTION 10(b) CLAIM. ............................ 7

        A.      Plaintiffs Fail To Plead A Material Misrepresentation Or Omission ..................... 7

                1.      Plaintiffs fail to support their accusation that Yahoo! issued false
                        financial statements ..................................................................... 8

                        a.      Plaintiffs do not support their revenue recognition
                                allegations with facts ......................................................... 8

                        b.      Plaintiffs do not support their reserve allegations with facts ....... 10

                2.      Plaintiffs fail to plead that Defendants' expressions of enthusiasm,
                        dedication, and optimism were false ......................................... 10

                3.      Plaintiffs fail to plead that Yahoo!'s estimates for the Panama
                        rollout lacked a reasonable basis when made .......................... 13

        B.      Plaintiffs Also Fail To Plead A "Strong Inference" Of Scienter ........... 16

                1.      Plaintiffs' CWs do not support an inference of scienter ........... 17

                2.      Plaintiffs' stock-sale allegations do not support an inference of
                        scienter ....................................................................................... 19

C.    The Forward-Looking Statements Are Not Actionable For Additional Reasons. .................................................................................................... 21

D.    Plaintiffs Also Fail To Plead Loss Causation. ...................................................... 23

III.    PLAINTIFFS FAIL TO STATE A SECTION 20(a) CLAIM. ......................................... 24

IV.    PLAINTIFFS FAIL TO STATE A SECTION 20A CLAIM. ........................................... 25

CONCLUSION ................................................................................................................................ 25

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

### CASES

4

*Alaska Elec. Pension Fund v. Adecco S.A.*, 434 F. Supp. 2d 815, 825 (S.D. Cal. 2006),
  *aff'd*, 256 F.App'x 74 (9th Cir. 2007) ................................................................... 10

5

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) ........................................... 6

6

7

*Berger v. Ludwick,*
  No. C-97-0728-CAL, 2000 U.S. Dist. LEXIS 12756 (N.D. Cal. Aug. 17, 2000) ................. 25

8

*Berson v. Applied Signal Tech., Inc.,*
  No. 06-15454, --- F.3d---,
  2008 U.S. App. LEXIS 11982 (9th Cir. June 5, 2008) ................................................. 23 n.16

9

10

*DSAM Global Value Fund v. Altris Software, Inc.*,
  288 F.3d 385 (9th Cir. 2002) .................................................................................. 19 n.9

11

12

*Dura Pharm., Inc. v. Broudo,*
  544 U.S. 336 (2005) ............................................................................................. 6, 23

13

14

*Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*,
  353 F.3d 1125 (9th Cir. 2004) ................................................................................ 22, 23

15

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
  352 F.3d 367 (9th Cir. 2003) .................................................................................. 11

16

17

*Howard v. Everex Sys.*,
  228 F.3d 1057 (9th Cir. 2000) ................................................................................ 19

18

19

*In re Apple Computer, Inc. Sec. Litig.*,
  243 F. Supp. 2d 1012 (N.D. Cal. 2002),
  *aff'd* 127 F.App'x 296 (9th Cir. 2005) .......................................... 11, 17 & n.8, 19 & nn.9, 10

20

21

*In re Buca Inc. Sec. Litig.*,
  No. 05-1762-DWF-AJB, 2006 U.S. Dist. LEXIS 75224 (D. Minn. Oct. 16, 2006) ............... 21

22

*In re Convergent Techs. Sec. Litig.*
  948 F.2d 507 (9th Cir. 1991) .................................................................................. 13 n.5

23

24

*In re CornerStone Propane Partners, L.P., Sec. Litig.*
  355 F. Supp. 2d 1069 (N.D. Cal. 2005) .................................................................... 11 n.4

25

26

*In re CornerStone Propane Partners, L.P. Sec. Litig.*,
  416 F. Supp. 2d 779 (N.D. Cal. 2005) ...................................................................... 17 n.8

27

28

*In re Credit Acceptance Corp. Sec. Litig.*,
    50 F. Supp. 2d 662 (E.D. Mich. 1999) ................................................................. 21

*In re Daou Sys., Inc.*,
    411 F.3d 1006 (9th Cir. 2005) .............................................. 7, 14, 15 n.6, 21, 23

*In re GlenFed, Inc. Sec. Litig.*,
    42 F.3d 1541 (9th Cir. 1994) (*en banc*) ................................................ 6, 7, 10, 13

*In re Hansen Natural Corp. Sec. Litig.*,
    527 F. Supp 2d 1142 (C.D. Cal. 2007) .................................................. 18, 21 n.13

*In re Juniper Networks, Inc. Sec. Litig.*,
    No. C-02-0749-SI, 2004 U.S. Dist. LEXIS 4025 (N.D. Cal. Mar. 11, 2004) ...................... 15

*In re McKesson HBOC, Inc. Sec. Litig.*,
    126 F. Supp. 2d 1248 (N.D. Cal. 2000) ................................................................ 12

*In re Metawave Commc'ns Corp. Sec. Litig.*,
    298 F. Supp. 2d 1056 (W.D. Wash. 2003) ............................................................ 25

*In re Northpoint Commc'ns Group, Inc. Sec. Litig.*,
    221 F. Supp. 2d 1090 (N.D. Cal. 2002) ................................................................. 8

*In re Pixar Sec. Litig.*,
    450 F. Supp. 2d 1096 (N.D. Cal. 2006) ................................................................ 11

*In re Read-Rite Corp. Sec. Litig.*,
    No. C-03-03148-RMW, 2004 U.S. Dist. LEXIS 19319 (N.D. Cal. Sept. 14, 2004) ............... 15

*In re Silicon Graphics, Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999) .................................................. 7, 17, 19 n.10, 20 n.12

*In re Silicon Storage Tech., Inc. Sec. Litig.*,
    No. C-05-0295-PJH, 2006 U.S. Dist. LEXIS 14790 (N.D. Cal. Mar. 10, 2006) ............... 9, 14

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
    No. C-99-00109-SBA, 2000 U.S. Dist. LEXIS 15369 (N.D. Cal. Sept. 29, 2000) .......... 10, 24

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
    160 F. Supp. 2d 1059 (N.D. Cal. 2001) ................................................................ 24

*In re Stac Elecs. Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996) ............................................................................ 11

*In re Syntex Corp. Sec. Litig.*,
    95 F.3d 922 (9th Cir. 1996) ................................................................... 11, 15, 16

*In re The Vantive Corp.*,
    283 F.3d 1079 (9th Cir. 2002) ................... 6–7, 10, 13, 15 n.7, 18, 19 & n.10, 20 & n.12, 21

*In re Tibco Software, Inc. Sec. Litig.*,
    No. C-05-2146-SBA, 2006 U.S. Dist. LEXIS 36666 (N.D. Cal. May 24, 2006)................... 14

*In re U.S. Aggregates, Inc. Sec. Litig.*,
    235 F. Supp. 2d 1063 (N.D. Cal. 2002) ............................................................. 9, 18

*In re VeriFone Sec. Litig.*,
    11 F.3d 865 (9th Cir. 1993)................................................................. 6, 12, 14, 25

*In re Versant Object Tech. Corp.* (*Versant I*),
    No. C-98-00299-CW, 2000 U.S. Dist. LEXIS 22333 (N.D. Cal. May 18, 2000)
    *aff'd*, 56 F.App'x 322 (9th Cir. 2003)................................................................. 11

*In re Versant Object Tech. Corp.* (*Versant II*),
    No. C-98-00299-CW, 2001 U.S. Dist. LEXIS 25010 (N.D. Cal. Mar. 30, 2001),
    *aff'd*, 56 F.App'x 322 (9th Cir. 2003)................................................................. 13

*In re Versant Object Tech. Corp.* (*Versant III*),
    No. C-98-00299-CW, 2001 U.S. Dist. LEXIS 25009 (N.D. Cal. Dec. 4, 2001),
    *aff'd*, 56 F.App'x 322 (9th Cir. 2003)................................................... 12, 21 n.13

*Johnson v. Aljian*,
    394 F. Supp. 2d 1184 (C.D. Cal. 2004), *aff'd*, 490 F.3d 778 (9th Cir.2007)........................ 25

*Kane v. Madge Networks N.V.*,
    No. C-96-20652-RMW, 2000 U.S. Dist. LEXIS 19984 (N.D. Cal. May 25, 2000),
    *aff'd*, 32 F. App'x. 905 (9th Cir. 2002)................................................... 10, 11 n.4, 12

*Kuehbeck v. Genesis Microchip, Inc.*,
    No. C-02-05344-JSW, 2005 U.S. Dist. LEXIS 20213 (N.D. Cal. July 27, 2005)................... 9

*Lattanzio v. Deloitte & Touche LLP*,
    476 F.3d 147 (2d Cir. 2007).......................................................................... 24

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005)...................................................................... 23, 24

*Limantour v. Cray, Inc.*,
    432 F. Supp. 2d 1129 (W.D. Wash. 2006) ............................................................. 8

*Lipton v. Pathogenesis Corp.*,
    284 F.3d 1027 (9th Cir. 2002).......................................................... 7, 19 n.11, 24

*Paracor Fin., Inc. v. GE Capital Corp.*,
    96 F.3d 1151 (9th Cir. 1996).......................................................................... 25

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001)............................................................ 12, 15, 20, 21 n.13

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
  127 S. Ct. 2499 (2007) .......................................................................................... 6, 21

*Wenger v. Lumisys, Inc.*,
  2 F. Supp. 2d 1231 (N.D. Cal. 1998) ............................................................. 11 n.4

**STATUTES & RULES**

15 U.S.C.
  § 78j(b) ...................................................................................................... *passim*
  § 78t(a) .............................................................................................................. 2, 24
  § 78t-1 ................................................................................................................ 2, 25
  § 78u-4(b) ................................................................................................. 7, 11, 17
  § 78u-5(c) .......................................................................................................... 18, 22

17 C.F.R. § 240.10b-5 ............................................................................................ *passim*

Fed. R. Civ. Pro.
  8........................................................................................................................... vii
  9(b) ............................................................................... vii, 6, 13, 15 n.7, 23 n.16
  12(b)(6) ............................................................................................................... vii

1

## NOTICE OF MOTION AND MOTION

2

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3

PLEASE TAKE NOTICE THAT on Thursday, September 18, 2008, at 2:00 p.m., or as

4

soon thereafter as the matter may be heard, in the courtroom of the Honorable Claudia Wilken,

5

located at 1300 Clay Street, Oakland, California, Courtroom 2, Fourth Floor, Defendant Yahoo!

6

Inc. ("Yahoo!") together with Terry S. Semel, Susan L. Decker, Daniel L. Rosensweig, and

7

Farzad Nazem (the "Individual Defendants") shall, and hereby do, move pursuant to Federal

8

Rules of Civil Procedure 8, 9(b), and 12(b)(6), and the Private Securities Litigation Reform Act

9

of 1995, Pub. L. No. 104-67, 109 Stat. 737 (Dec. 22, 1995) (the "Reform Act"), codified in

10

relevant part at 15 U.S.C. § 78u-4 *et seq*., to dismiss Plaintiffs' Consolidated Amended Complaint

11

for Violation of the Federal Securities Laws as filed on December 11, 2007 (the "Complaint" or

12

"CAC").

13

This Motion is based on this Notice; the supporting Memorandum of Points and

14

Authorities; the Appendix attached to this Motion (cited as "App.__"); the accompanying

15

Declaration of Mark R.S. Foster ("Foster Decl.") and exhibits attached thereto ("Ex. __"); the

16

Declaration of Matthew H. Rice ("Rice Decl."); the accompanying Request for Judicial Notice of

17

documents attached to the Foster Declaration; the papers and pleadings on file with this Court;

18

and such other written or oral argument and other materials as may be presented before this Court

19

takes the Motion under submission.

20

21

22

23

24

25

26

27

28

**ISSUES TO BE DECIDED**

**False Statement of Material Fact [Section 10(b)]**

1.      Whether Plaintiffs plead that Defendants made a material misrepresentation or omission, as required to state a claim under Section 10(b), where the CAC does not plead particularized facts to support Plaintiffs' conclusory allegations that Defendants (a) caused Yahoo! to issue false financial statements, or (b) made overly optimistic statements about Yahoo!'s business prospects, or (c) predicted the upgrade date of Yahoo!'s advertising platform with no reasonable basis for doing so.

**Scienter [Section 10(b)]**

2.      Whether Plaintiffs satisfy the additional element of scienter by pleading particularized facts giving rise to a "strong inference" that Defendants made a material misrepresentation or omission with intent to deceive or with deliberate recklessness, where Plaintiffs plead no facts showing that any Defendant knew or recklessly disregarded that any class period statement was false and Plaintiffs identify nothing suspicious about Defendants' stock sales.

**Safe Harbor [Section 10(b)]**

3.      Whether the Reform Act's Safe Harbor and the "bespeaks caution doctrine" protect Defendants from liability with regard to their optimistic statements about Yahoo!'s future and the timing of a product upgrade, where those statements were identified as forward-looking and accompanied by meaningful cautionary language.

**Loss Causation [Section 10(b)]**

4.      Whether Plaintiffs plead the element of loss causation for their claim that Yahoo!'s class-period financial statements were false, where Plaintiffs do not allege that the accuracy of these financial statements has ever been questioned outside this litigation, much less that a disclosure regarding the accuracy of these financial statements caused a drop in Yahoo!'s stock price.

5.      Whether Plaintiffs plead the element of loss causation for their claim based on a delay in the upgrade of Yahoo!'s advertising platform, where Yahoo! had previously disclosed the risk to its business of delays in system upgrades.

1

**Control-Person Liability [Section 20(a)]**

2

6.      Whether Plaintiffs state a claim for control-person liability against any Defendant,

3

where the CAC does not plead a primary violation of the securities laws and where Plaintiffs fail to

4

plead particularized facts showing that the Individual Defendants exercised control over the subject

5

matter of the alleged fraud.

6

**Contemporaneous Inside Trading [Section 20A]**

7

7.      Whether Plaintiffs state a claim against any Individual Defendant for unlawful

8

contemporaneous trading, where the CAC fails to plead a primary violation of the securities laws

9

and where Plaintiffs have failed to allege with particularity any material, nonpublic information in

10

the possession of any Individual Defendant at the time of any allegedly contemporaneous stock

11

sales.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INTRODUCTION**

2

In late 2003, Yahoo! entered the internet search marketing business by acquiring Overture

3

Services, Inc.  Plaintiffs contend that, by April 2004, four of Yahoo!'s most senior executives knew

4

that the new business was doomed to fail and that Yahoo!'s principal competitor, Google, was

5

destined to dominate the industry.  Plaintiffs assert that Defendants responded by launching a 27-

6

month fraudulent scheme designed to conceal Yahoo!'s allegedly inevitable decline by (1) inflating

7

its revenue, (2) disingenuously expressing enthusiasm for its prospects, and (3) predicting that an

8

upgrade to its search marketing platform called "Panama" would launch earlier than it eventually

9

did.  Alleging gossip and innuendo is not enough.  A complaint must be supported by

10

"particularized facts" pled "in great detail."  The Consolidated Amended Complaint ("CAC") is

11

devoid of the required factual support.

12

Plaintiffs assert that Defendants inflated revenue by turning a "dial" on Yahoo!'s click fraud

13

filters.  But Plaintiffs provide no facts to support this allegation, relying instead on speculation and

14

rumors, such as a "running joke" recounted by a former sales representative.

15

Plaintiffs attack statements about the prospects of Yahoo!'s search marketing business

16

generally, and Panama in particular, as deceptive based on the accounts of confidential witnesses

17

("CWs") who Plaintiffs claim are former employees of Yahoo! and/or Overture.  These CWs

18

recount "problems" Yahoo! faced after the Overture acquisition, such as a "culture clash" between

19

the two organizations and strains on systems from an increase in traffic.  The obvious fact that

20

Yahoo!'s employees faced "problems" after the Overture acquisition and during the development of

21

Panama does not, however, show that Defendants knew all along that Yahoo!'s plans were doomed

22

to fail.

23

Plaintiffs rely on Defendants' stock sales to support the required strong inference of scienter.

24

There was nothing suspicious about these sales, however:  they are large because Plaintiffs select a

25

27-month class period to sweep in as many sales as possible; the amount of sales declines as the

26

class period progresses; and Plaintiffs nowhere link the sales to any alleged misstatements or to

27

Yahoo!'s stock price performance.

28

1

Plaintiffs also fail to plead loss causation because they do not show that Yahoo!'s share price fell significantly after the "truth" became known. No one except for these Plaintiffs has ever questioned Yahoo!'s reported historical revenues, and the modest delay in launching Panama was a materialization of a disclosed risk that cannot establish loss causation.

A company that employs tens of thousands of people, generates billions of dollars in annual revenue, serves hundreds of millions of customers a day from around the globe, and operates at the frontiers of technology will, inevitably, face challenges. Plaintiffs do not show that Yahoo!'s challenges were insurmountable, much less that Defendants knew them to be so during the class period. For these reasons and others discussed below, Plaintiffs fail to state a Section 10(b) claim for securities fraud against any Defendant. Plaintiffs' related claims under Sections 20(a) and 20A fail for the same and additional reasons.

## BACKGROUND

### I.    THE PARTIES

Yahoo! is a global internet services company headquartered in Sunnyvale. Ex. 14 at 1. Plaintiffs purport to represent a class of investors who purchased Yahoo!'s common stock between April 8, 2004 and July 18, 2006 (the "Class Period"). CAC ¶ 1. Plaintiffs name as defendants Yahoo! and four Individual Defendants: Terry S. Semel, former Chairman and Chief Executive Officer; Susan L. Decker, who is currently Yahoo!'s President, and who was Chief Financial Officer and Executive Vice President of Finance and Administration during the Class Period; Farzad Nazem, former Chief Technology Officer; and Daniel L. Rosensweig, former Chief Operating Officer. *Id.* ¶¶ 15–18.

### II.    PLAINTIFFS' ALLEGATIONS

#### A.    Yahoo!'s Search Marketing Business

Before 2003, Yahoo! generated the vast majority of its revenue by displaying advertisements on its network of web properties. In October 2003, Yahoo! acquired Overture Services, Inc. ("Overture"), which was engaged in a second kind of internet advertising called "search marketing" or "pay per click" advertising. CAC ¶ 3. Yahoo! integrated Overture's operations into a separate division.

Yahoo!'s search marketing division places "text-based links" on Yahoo! properties and on sites operated by other companies (called Affiliates) who belong to the Yahoo! Search Network. "Text-based links" are short strings of advertising copy that hyperlink to the advertiser's own site. Placement of the links is determined by: (1) a Yahoo! search algorithm that reads the content of the page being viewed (or, in the case of a user searching the web, the user's search terms) and selects the most relevant links; and (2) the amount the advertiser agrees (through a bidding process) to pay Yahoo! per click. Advertisers pay only when a user clicks on the link. CAC ¶ 88. When a user clicks on a link appearing on an Affiliate's page, Yahoo! pays that Affiliate a percentage of the advertiser's payment to Yahoo!. *Id.*

The CAC contains extensive allegations about "click fraud." This term applies to activity undertaken for the sole purpose of causing Yahoo!, Google, or other search marketing businesses to log a click. CAC ¶ 92. Click fraud may be committed by an Affiliate seeking to generate a payment for itself, or by an advertiser's competitor seeking to impose a cost on the advertiser. *Id.* During the Class Period, Yahoo! filtered clicks to avoid charging advertisers for fraudulent clicks. *Id.* ¶ 22(d); Ex. 43 at 1.

## B.    Securities Fraud Allegations

Plaintiffs allege that Defendants are responsible for 114 Class Period investor communications allegedly containing material misrepresentations. These alleged misrepresentations fall into three categories: (1) Yahoo!'s financial statements; (2) statements of enthusiasm and optimism about Yahoo!; and (3) statements about the expected launch of Panama.

### 1.    Financial reporting

#### a.    revenue recognition

Plaintiffs allege that "defendants implemented a method to change the 'dial' on the Company's click-fraud detection system at the end of the quarter to allow non-billable click activity to be passed on to customers, thereby increasing the Company's revenues at the end of the quarter." CAC ¶¶ 56(f), 60(f), 73(f), 79(f), 90(f), 102(f), 113(g), 123(f), 131(i), 139(g). The allegations are contained in one boilerplate text block identical for each of the ten quarters. *See id.*

1    Plaintiffs allege that the reason "defendants" turned down the "dial" was to meet Wall

2    Street's expectations. *See id.* The boilerplate does not identify which "defendants" turned down the

3    "dial," describe the "dial," describe the "method" that was "implemented," identify any dates on

4    which the "dial" was turned up or down, or identify any of the people involved in the process.

5    Plaintiffs assert that by turning the "dial," Yahoo! inflated its revenue at least 10% during each of

6    the ten quarters in the Class Period. CAC ¶¶ 56(g), 73(g), 79(g), 90(g), 102(g), 113(h), 123(g),

7    131(d), 139(b), 144(a), 203.

8                    **b.      reserves**

9    Plaintiffs also allege that Yahoo! failed to maintain adequate reserves on its balance sheet

10   for expected refunds to advertisers complaining of click fraud. *Id.* ¶¶ 56(h), 73(h), 79(h), 90(h),

11   101(h), 113(a), 123(h), 131(e), 139(c), 144(a), 213. Plaintiffs do not allege the amount of Yahoo!'s

12   refund reserves, how they were calculated, or what they should have been at any time during the

13   Class Period.

14             **2.      Defendants' optimistic statements about Yahoo!**

15   Plaintiffs assert that during the first 15 months of the Class Period — from April 2004

16   through July 2005 — Defendants Semel, Decker, and Rosensweig made various statements

17   expressing enthusiasm about Yahoo! and its future business prospects, describing the challenges

18   facing Yahoo!, and pledging the dedication of Yahoo!'s leadership to achieving success. *See* CAC

19   ¶¶ 49–56, 57–60, 61–72, 75–79, 81–90, 91–102, 103–13. As support, Plaintiffs paste in large

20   blocks of text copied from Yahoo! press releases, SEC filings, quarterly conference calls, and

21   analyst reports from April 2004 through July 2005. *Id.* Plaintiffs assert that "Defendants'

22   statements" were false and misleading because "Defendants knew, or recklessly disregarded, but

23   failed to disclose" the following litany of "problems": "Yahoo! was actually 'bursting at the

24   seams'" because of high traffic volume, Yahoo! "refused to provide adequate resources" to search

25   marketing, the Overture integration was hampered by a "culture clash," Yahoo! fired

26   knowledgeable engineers, Yahoo! did not provide adequate resources for "solving the blob," and

27   Yahoo!'s Content Match product was performing poorly. *Id.* ¶¶ 56, 60, 70, 72, 79, 90, 102.

28

1

### 3.     Project Panama

2      The third and final category of alleged misrepresentations in the CAC consists of statements

3   concerning when Yahoo! expected to launch a series of technological upgrades that became known

4   as "Project Panama." CAC ¶ 3.[1]  The Panama initiatives were designed to better "monetize"

5   Yahoo!'s search capability by delivering an improved search marketing product to advertisers.  *Id.*

6      On July 19, 2005, Yahoo! publicly announced that it had an internal plan for rolling out

7   these "long-term initiatives."  *Id.* ¶ 104.  Between August 2005 and January 2006, Yahoo! reported

8   that some new initiatives had rolled out, that testing of others would begin in the first half of 2006,

9   that there would be a "broader rollout thereafter," and that financial benefit would begin to accrue

10  after a "full rollout of the initiatives," predicted to be in late 2006 and early 2007.  *Id.* ¶¶ 109, 117,

11  125.

12     On April 18, 2006, Mr. Semel said that Yahoo! was planning on a three-phase rollout of its

13  remaining monetization initiatives.  The first phase, which was building a data platform, was

14  "almost complete"; the second phase was a new on-line application for advertisers to manage ad

15  campaigns; and the third phase was the introduction of a new system for ranking advertising links

16  by quality as well as bid price.  Ex. 30 at 18; CAC ¶ 138.  Mr. Semel did not predict when these

17  phases would be launched; he said only that Yahoo! expected "testing in the first half of 2006" and

18  "rolling out the service beginning in the second half of this year."  Ex. 30 at 18.

19     On May 17, 2006, Yahoo! held a conference with analysts.  A Deutsche Bank report issued

20  the next day stated:  "'Yahoo! management indicated that search monetization is on track for a late

21  3Q/4Q launch.'"  CAC ¶ 143; Ex. 36 at 1.  A Jefferies report stated that phase two would "become

22  available to advertisers in 3Q06" and that "Phase 3 is expected in 4Q06."  CAC ¶ 143; Ex. 37 at 2.

23     On July 18, 2006, Yahoo! announced its 2Q 2006 results.  While the results were within the

24  range Yahoo! had projected, they fell short of the more optimistic expectations of stock analysts.

25  Yahoo!'s stock price fell $7.04 following the announcement.  CAC ¶ 232.

26

---

[1]  Project Panama was a name used internally at Yahoo! during the Class Period, but was not

27  referenced in any of the documents cited in the CAC until after its public use at the May 17, 2006

analyst day.  *See* Ex. 31 at 11.

28

1    In an analyst conference call that day addressing a wide array of issues, Mr. Semel stated

2    that the second and third phases of Panama would roll out in the fourth quarter of 2006 and the first

3    quarter of 2007 respectively (rather than in the third quarter and fourth quarter of 2006).  *See* CAC ¶

4    150; *see also* Ex. 32 at 4.  Mr. Semel explained that it was "prudent to add some extra time to our

5    original estimates for the commercial launch" and that the extra time would be used for testing and

6    "to collect feedback from our advertisers on the timing and cause them as little disruption as

7    possible" given "the complexity and importance of going to market with an application of this

8    scale."  Ex. 32 at 4.

9    On October 17, 2006 — less than three weeks after the end of 3Q 2006 — Yahoo!

10   announced that phase two of Panama, the advertising platform, was "live."  Ex. 33 at 2.  In February

11   2007, Yahoo! announced the launch of phase three of Panama.  Ex. 44.

12                                          **ARGUMENT**

13   **I.    PLAINTIFFS MUST SATISFY "EXACTING PLEADING REQUIREMENTS."**

14   To state a Section 10(b) claim, a plaintiff must allege facts showing, *inter alia*, that the

15   defendant made a material misrepresentation or omission, with scienter, that caused the plaintiff's

16   loss.  *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005).

17   To survive a motion to dismiss, a complaint must plead "enough facts to state a claim for

18   relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

19   "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

20   dismiss."  *In re VeriFone Sec. Litig.*, 11 F.3d 865, 868 (9th Cir. 1993).

21   Heightened pleading standards apply to securities fraud class actions.  Plaintiffs must satisfy

22   Fed. R. Civ. P. 9(b), which "requires particularity as to the circumstances of the fraud," including

23   the "time, place, persons, statements made, [and] explanation of why or how such statements are

24   false or misleading."  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (*en banc*).

25   Plaintiffs also must satisfy the "[e]xacting pleading requirements" imposed by the Reform

26   Act.  *Tellabs, Inc.  v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2504 (2007).  The Reform Act

27   "significantly altered pleading requirements in private securities fraud litigation by requiring that a

28   complaint plead with particularity both falsity and scienter."  *In re The Vantive Corp.*,

1   283 F.3d 1079, 1084 (9th Cir. 2002).  Plaintiffs "must therefore allege facts reflecting 'the who,

2   what, when, where, and how' with respect to the facts underlying [a] claim."  *In re Silicon*

3   *Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 998 (9th Cir. 1999) (citations omitted).  These facts and

4   circumstances must be pleaded in "great detail."  *Id.* at 974.

5           Plaintiffs attempting to meet these exacting pleading standards typically rely on internal

6   documents prepared contemporaneously with the allegedly false statements and on witness

7   statements of former employees possessing personal knowledge of the alleged fraud.  *See In re*

8   *Daou Sys., Inc.*, 411 F.3d 1006, 1015 (9th Cir. 2005); *Lipton v. Pathogenesis Corp.,* 284 F.3d 1027,

9   1035–36 (9th Cir. 2002).  Here, Plaintiffs cite no internal Yahoo! documents.  Instead, Plaintiffs

10  rely on statements that they attribute to fifteen anonymous former employees whom they refer to as

11  CWs.  A complaint relying on CW statements must meet a two-part burden. *Daou*, 411 F.3d

12  at 1015.  First, the complaint must plead facts with "sufficient particularity to support the

13  probability that a person in the position occupied by the source would possess the information

14  alleged."  *Id.* (citations omitted).  Second, the complaint must plead facts sufficient to establish that

15  each CW is reliable, taking into account the totality of circumstances, including "the coherence and

16  plausibility of the allegations, the number of sources, the reliability of the sources, and similar

17  indicia."  *Id.* (citations omitted).

18  **II.     PLAINTIFFS FAIL TO STATE A SECTION 10(b) CLAIM.**

19          **A.      Plaintiffs Fail To Plead A Material Misrepresentation Or Omission.**

20          To plead falsity, Plaintiffs must "'specify each statement alleged to have been misleading,

21  the reason or reasons why the statement is misleading, and, if an allegation regarding the statement

22  or omission is made on information and belief, . . . the complaint shall state with particularity all

23  facts on which that belief is formed.'"  *Vantive*, 283 F.3d at 1085 (quoting 15 U.S.C. § 78u-4(b)(1)).

24  Facts that must be pleaded with particularity include the "who, what, when, where, and how" of the

25  alleged fraud.  *GlenFed*, 42 F.3d at 1548.  The CAC fails this test.

26

27

28

1

     **1.**     **Plaintiffs fail to support their accusation that Yahoo! issued false financial statements.**

2

3

     **a.**     **Plaintiffs do not support their revenue recognition allegations with facts.**

4     The CAC does not contain particularized facts to support Plaintiffs' allegation that

5     Defendants inflated Yahoo!'s revenue by turning a "dial" on Yahoo!'s click-fraud filters to achieve

6     Wall Street expectations.  Plaintiffs and their CWs do not identify the "defendants" involved, do not

7     describe the "dial" or where it was located, say nothing about the "method" defendants allegedly

8     "implemented," do not identify any day or week when this occurred, and do not describe the

9     revenue recognition process or how it was affected on any occasion by the "dial" being turned.  The

10     fact that Plaintiffs rely on the same boilerplate throughout the 27-month Class Period confirms that

11     these "dial" allegations are generic rather than particularized.

12     Plaintiffs cite no internal documents to support their conclusory "dial" allegations, relying

13     exclusively on two CWs.  CW8 allegedly stated that "there was an effort inside Yahoo! to relax the

14     click-fraud detection standards."  CAC ¶ 27.  CW8, however, did not say when the standards were

15     relaxed, who exerted the "effort," whether it succeeded, or whether a Defendant was involved.

16     CW12, a former sales manager, allegedly said that there was a "running joke" at Yahoo! about a

17     revenue dial.  CAC ¶ 31(l).  Pleading a joke among the sales staff does not plead accounting fraud

18     under the Reform Act.  *See In re Northpoint Commc'ns Group, Inc. Sec. Litig.*, 221 F. Supp. 2d

19     1090, 1098 (N.D. Cal. 2002) (rejecting confidential witness's allegation based on "second hand

20     rumor" because it was not based on personal knowledge); *see also Limantour v. Cray, Inc.*,

21     432 F. Supp. 2d 1129, 1141 (W.D. Wash. 2006) (rejecting confidential witness reports based on

22     "gossip and innuendo").  Furthermore, Plaintiffs' "dial" theory is inconsistent with Plaintiffs'

23     allegation that Yahoo! missed investor expectations (while meeting its own guidance) on four

24     occasions during the Class Period:  2Q 2004, 2Q 2005, 4Q 2005, and 2Q 2006.  CAC ¶¶ 67, 108,

25     130, 150.

26     Also, Plaintiffs provide no support for their accusation that, by turning the "dial,"

27     Defendants inflated Yahoo!'s revenue at least 10% each quarter.  *See* CAC ¶¶ 56(g), 73(g), 79(g),

28

1    90(g), 102(g); 112(g); 131(d); 139(b); The 10% figure comes not from internal company

2    documents, but rather from magazine articles estimating the prevalence of click-fraud industry-

3    wide.  CAC ¶¶ 203–08.  These sources say nothing about Yahoo!'s recognition of revenue.  *See*

4    Exs. 45–49.[2]

5         Plaintiffs try to corroborate their 10% inflation allegation through two confidential

6    witnesses:  CW3, who allegedly served as an Engineering Manager at Overture until October 2004;

7    and CW6, who allegedly was a sales representative.  CAC ¶¶ 22, 25, 203.  Neither of these

8    confidential witnesses is alleged to have had any role in or knowledge of Yahoo!'s revenue

9    recognition practices; neither, therefore, is a reliable source.  *See In re U.S. Aggregates, Inc. Sec. Sec.*

10   *Litig.*, 235 F. Supp. 2d 1063, 1074 (N.D. Cal. 2002) (accounting fraud claim not corroborated where

11   "none of the confidential witnesses have any first-hand knowledge of [defendant's] accounting

12   decisions"); *see also Kuehbeck v. Genesis Microchip, Inc.*, No. C-02-05344-JSW, 2005 U.S. Dist.

13   LEXIS 20213, at *18–19 (N.D. Cal. July 27, 2005) (same).  CW3, moreover, was not even a

14   Yahoo! employee during most of the Class Period, and lacks reliability for this additional reason.  *In*

15   *re Silicon Storage Tech., Inc. Sec. Litig.,* No. C-05-0295-PJH, 2006 U.S. Dist. LEXIS 14790, at

16   *24–25, *32–33 (N.D. Cal. Mar. 10, 2006).[3]  In short, Plaintiffs' revenue recognition allegations are

17

18   [2]  Plaintiffs imply that Yahoo!'s announcement on June 29, 2006, that it had settled a consumer
     class action lawsuit by advertisers relating to click fraud supports Plaintiffs' claims of accounting

19   fraud.  *See* CAC ¶¶ 10, 147, 154, 210, 254.  Nothing in that settlement, however, provides any

20   particularized facts about the alleged accounting fraud.  Indeed, the settlement includes Yahoo!'s
     assertion that its "click protection system has filtered clicks in a total amount which exceeds a

21   reasonable estimate with respect to the quantity of clicks which are Challenged Clicks . . . ."  Ex.
     51 ¶ 32(v).  The settlement is not "an admission, concession or indication by or against Yahoo! of

22   any fault, wrongdoing or liability whatsoever."  *Id.* ¶ 27.

23   Plaintiffs also state that, in March 2007, "Yahoo! agreed that it would no longer bill advertisers
     12%-15% of the clicks on its ads."  CAC ¶ 154.  This description is terribly misleading.  The

24   March 2007 news report states that both Yahoo! and Google publicly disclosed the rates at which
     *they had already been filtering* invalid clicks.  Ex. 50.

25   Plaintiffs also allege that Yahoo! admitted that it benefited from click fraud (*see* CAC ¶¶ 10, 150,

26   233), but provide no support for the conclusory allegation.
     [3]  For the same reason, this Court can disregard the statements attributed to CW5, who allegedly

27   left Yahoo! in June 2004.  CAC ¶ 24.  In any event, CW5 offers no relevant or corroborating
     facts.

28

1   devoid of the factual support necessary to state a claim for accounting fraud.  *See Vantive*, 283 F.3d

2   at 1091 (affirming dismissal where "allegations of improper recognition of revenues . . . contain no

3   specifics or corroborating details of time, persons, places, and subjects"); *Alaska Elec. Pension*

4   *Fund v. Adecco S.A.*, 434 F. Supp. 2d 815, 825 (S.D. Cal. 2006) (dismissing complaint that did "not

5   plead sufficient facts to support its allegation [that defendant's] financial statements overstated

6   revenues "), *aff'd*, 256 F.App'x 74 (9th Cir. 2007).

7           **b.      Plaintiffs do not support their reserve allegations with facts.**

8           Plaintiffs also fail to plead particularized facts showing that Yahoo!'s refund reserves were

9   inadequate.  CAC ¶¶ 211–13.  Plaintiffs do not allege the size of Yahoo!'s refund reserves or the

10  size that they should have been for any quarter during the Class Period, much less for all ten.

11  Plaintiffs do not show that Yahoo! was contractually bound to provide refunds or that it had a policy

12  or practice of doing so.  Plaintiffs have not, therefore, pled a factual basis for their conclusory

13  allegations of inadequate reserves.  *See Kane v. Madge Networks N.V.*, No. C-96-20652-RMW,

14  2000 U.S. Dist. LEXIS 19984, at *18 n.8 (N.D. Cal. May 25, 2000) (allegation that company

15  misstated reserves for accounts receivable inadequate where complaint failed to identify the specific

16  customers who refused to pay their bills and did not plead facts that any customer "would renege on

17  their legal obligation to pay"), *aff'd*, 32 F.App'x. 905 (9th Cir. 2002).

18          **2.      Plaintiffs fail to plead that Defendants' expressions of enthusiasm,
                        dedication, and optimism were false.**

19

20          Most of the CAC consists of block quotations taken from statements by Defendants and

21  securities analysts, which Plaintiffs declare to have been false in light of various "problems"

22  discussed in one boilerplate paragraph.  *See* CAC ¶ 49–56, 57–60, 61–72, 75–79, 81–90, 91–102,

23  103–13.  Here again, Plaintiffs fail to plead falsity with the required particularity.

24          First, Plaintiffs fail to identify with particularity the statements they contend are false.  The

25  Ninth Circuit has long criticized complaints, like the CAC, that "ramble[] through long stretches of

26  material quoted from defendants' public statements (many of which seem innocuous enough even

27  by plaintiffs' own recounting) unpunctuated by any specific 'reasons for falsity' — which, indeed,

28  prove difficult to locate in the surrounding area."  *GlenFed*, 42 F.3d at 1553–54.  It is insufficient to

1  leave "it up to defendants and the court to try to figure out exactly what the misleading statements

2  are, and to match the statements up with the reasons they are false or misleading." *In re Splash*

3  *Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1074 (N.D. Cal. 2001) (citation omitted).

4  For this reason, Plaintiffs fail to satisfy the Reform Act's requirement of "identifying with

5  particularity what statements are false and misleading." *In re Pixar Sec. Litig.*, 450 F. Supp. 2d

6  1096, 1100–01 (N.D. Cal. 2006) (citing 15 U.S.C. § 78u–4(b)(1)).

7       Second, much of the block text consists of statements by securities analysts.  CAC ¶¶ 51, 53,

8  64, 65, 67, 70, 77, 83, 97, 98, 99, 105, 106, 107, 108, 119, 120, 128, 129, 130, 134, 138.  A

9  defendant can be held liable for statements by analysts only if the defendant expressly or impliedly

10  adopts or endorses the statements or provides information to the analysts with the intent that they

11  will communicate it to the market.  *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 934 (9th Cir. 1996);

12  *In re Versant Object Tech. Corp.* (*Versant I*), No. C-98-00299-CW, 2000 U.S. Dist. LEXIS 22333,

13  at *22–23 (N.D. Cal. May 18, 2000), *aff'd*, 56 F.App'x 322 (9th Cir. 2003).  Plaintiffs, however,

14  plead no such facts.

15       Third, "generalized, vague and unspecific assertions" by executives that they are confident

16  their business will succeed, such as the expressions of enthusiasm, dedication, and optimism that

17  Plaintiffs attribute to Defendants Semel, Decker, and Rosensweig, are not actionable as a matter of

18  law.  *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 379 (9th Cir. 2003) (citations

19  omitted).  As this Court has explained, "investors . . . know how to devalue the optimism of

20  corporate executives, who have a personal stake in the future success of the Company."  *In re Apple*

21  *Computer, Inc. Sec. Litig.*, 243 F. Supp. 2d 1012, 1026 (N.D. Cal. 2002) (quotations omitted), *aff'd*,

22  32 F. App'x. 905 (9th Cir. 2003); *Versant I*, 2000 U.S. Dist. LEXIS 22333, at *21 (same).[4]

23

---

24  [4]  The statements of optimism include statements regarding (a) growth, development, and strategy
(*see* CAC ¶¶ 49–52, 61, 62, 64–66, 75, 76, 81, 82, 85–87, 93, 94, 103, 104, 109, 114–118, 137;

25  (b) the expected successful integration of Overture personnel and technology (*see id.* ¶¶ 49, 50,
57); (c) the strength of Yahoo!'s management team (*see id.* ¶ 85); and (d) anticipated successes.

26  *See id.* ¶¶ 49, 50, 61, 62, 65, 66, 76, 82, 85, 94, 103, 104, 109, 114, 115–118.  Numerous courts
have held that similar optimistic statements are not actionable.  *See, e.g.*, *In re CornerStone*

27  *Propane Partners, L.P.*, 355 F. Supp. 2d 1069, 1087 (N.D. Cal. 2005); *Kane*, 2000 U.S. Dist.
LEXIS 19984, at *8–9; *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1245–46 (N.D. Cal. 1998).

28

Fourth, the facts set out in the boilerplate paragraph are not inconsistent with the text blocks Plaintiffs quote.  The existence of a post-merger "culture clash," for example, does not render statements about Yahoo!'s operations or strategic plan false.  *Kane*, 2000 U.S. Dist LEXIS 19984, at *21–23 (complaint dismissed where plaintiffs did not plead particularized facts to support claim that departments were "in conflict and upheaval" after corporate merger); *see also Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001).

Fifth, many of the statements in the text blocks consist of opinions and statements about the future.  To plead that an expression of opinion is "false," a plaintiff must plead particular facts showing "why the statement of opinion was objectively *and* subjectively false," that is that the defendant did not genuinely hold the opinion and that there was no reasonable basis for the opinion at the time.  *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1265 (N.D. Cal. 2000).  To plead that a forward-looking statement is false, a plaintiff must plead contemporaneous facts showing that "one of three implied factual assertions is inaccurate: (1) that the statement is genuinely believed, (2) that there is a reasonable basis for that belief, and (3) that the speaker is not aware of any undisclosed facts tending to seriously undermine the accuracy of the statement."  *VeriFone*, 11 F.3d at 870 (quotations omitted); *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1409 (9th Cir. 1996) (same).  The boilerplate cites several CWs, but none present facts sufficient to demonstrate that any statement lacked a reasonable basis when made, or that any opinion was not genuinely believed.

At best, Plaintiffs have alleged that Yahoo! faced challenges during the Class Period, which is hardly surprising.  "Problems and difficulties are the daily work of business people.  That they exist does not make a lie out of any of the alleged false statements."  *Ronconi*, 253 F.3d 423 at 434.  To plead lack of a reasonable basis because of problems requires pleading "specific facts that show how these 'problems' and 'difficulties'" could not have been solved.  *Id.*; *In re Versant Object Tech. Corp.* (*Versant III*), No. C-98-00299-CW, 2001 U.S. Dist. LEXIS 25009, at *20 (N.D. Cal. Dec. 4, 2001), *aff'd*, 56 F.App'x 322 (9th Cir. 2003).  The grievances of fifteen former employees do not show that Defendants did not genuinely hold their enthusiasm, that they were not genuinely

1   dedicated to Yahoo!'s success, or that there was no reasonable basis to believe that Yahoo! would

2   succeed.

3           **3.      Plaintiffs fail to plead that Yahoo!'s estimates for the Panama rollout
                      lacked a reasonable basis when made.**

4

5           Plaintiffs' assertion that Defendants falsely predicted dates on which Panama would launch

6   at a May 17, 2006 analyst day is not supported by facts.  CAC ¶¶ 143–44.  Plaintiffs rely entirely on

7   the reports of two analysts that "'Yahoo! management indicated that search monetization is on track

8   for a late 3Q/4Q launch.'"  CAC ¶ 143; Exs. 36 at 1, 37 at 2.[5]  This reliance is misplaced because

9   the reports do not indicate that the speaker was a Defendant, what in particular he or she indicated

10  and how he or she indicated it, whether his or her prediction was accompanied by cautionary

11  language, whether the he or she was aware of facts inconsistent with his or her prediction, or

12  whether he or she acted with scienter.  These are the most basic requirements of Rule 9(b) and the

13  Reform Act.  *Vantive*, 283 F.3d at 1085; *GlenFed*, 42 F.3d at 1548.

14          As this Court has previously recognized, where plaintiffs rely upon analyst reports to

15  attribute a false statement to a defendant, the plaintiffs must "plead with particularity all facts

16  supporting their belief" that the particular defendant made the allegedly false statement to the

17  analyst.  *In re Versant Object Tech. Corp.* (*Versant II*), No. C-98-00299-CW, 2001 U.S. Dist.

18  LEXIS 25010, at *6 (N.D. Cal. Mar. 30, 2001), *aff'd*, 56 F.App'x 322.  It is not enough, as here

19  (CAC ¶ 143), for a complaint to quote analyst reports saying "Management believes" something, as

20  these statements "are not direct statements by Defendants."  *Versant II*, 2001 U.S. Dist. LEXIS

21  25010, at *23.  Such allegations fail to plead falsity with particularity.  *Id.*; *see also Vantive*,

22  283 F.3d at 1085; *GlenFed*, 42 F.3d at 1548.

23

24  ――――――――――――――――――

25  [5]  Plaintiffs quote numerous forward-looking statements made before May 2006 concerning
    Yahoo!'s plans to improve the monetization of its search technology.  CAC ¶¶ 104, 109, 115,

26  117, 118, 125.  None of these statements include a prediction by a Defendant about the date on
    which any monetization initiative would launch.  And Plaintiffs do not allege that any of these

27  pre–May 2006 predictions did not come true.  *See In re Convergent Techs. Sec. Litig.*, 948 F.2d
    507, 514 (9th Cir. 1991) (predictions that come true cannot support liability under Section 10(b)).

28

1      This case provides a perfect example of why these pleading requirements are in effect.  As is

2   clear from the transcript of the analyst day presentation (*see* Ex. 31 at 40), which Plaintiffs ignore,

3   the Panama prediction was *not* made by one of the Individual Defendants, the speaker's statements

4   *were* accompanied by cautionary language (*id.* at 1, 90), the speaker is *not* a person Plaintiffs allege

5   was aware of any facts inconsistent with his statements, and he is *not* a person Plaintiffs allege to

6   have acted with scienter.

7      Additionally, pleading that Yahoo! predicted a launch that was later delayed does not plead

8   that the forecast was "false" when made.  Rather, Plaintiffs must plead facts showing that (1) the

9   forecast was not genuinely believed, (2) there was not a reasonable basis for that belief, or (3) the

10   speaker was aware of undisclosed facts tending to seriously undermine the accuracy of the forecast.

11   *VeriFone*, 11 F.3d at 870; *Stac*, 89 F.3d at 1409.  Plaintiffs attempt to meet this standard through

12   reliance on CWs 1, 2, 4, 7, 10, 11, 12, and 15.  Plaintiffs' allegations, however, are inadequate for

13   several independent reasons.

14      The first *Daou* criterion disposes of the statements attributed to CWs 7, 10, 11, 12, and 15.

15   Plaintiffs do not plead particularized facts to support the probability that any of these individuals

16   would possess the information about Panama attributed to them.  *Daou*, 411 F.3d at 1015.  CWs 7

17   and 12 had sales and customer service roles.  CAC ¶¶ 26, 31(a).  Neither is alleged to have had any

18   information about the development of Panama, and their job descriptions do not support an

19   inference that they did.  *See In re Tibco Software, Inc. Sec. Litig.*, No. C-05-2146-SBA, 2006 U.S.

20   Dist. LEXIS 36666 (N.D. Cal. May 24, 2006), at *70 (finding that IT Operations Manager was not a

21   reliable source concerning the company's allegedly fraudulent sales).  CWs 10 and 11 left Yahoo!

22   in December 2004 and January 2005 — months before Yahoo! issued any prediction about Panama.

23   CAC ¶ 29.  A confidential witness who was not employed at the time of an allegedly false statement

24   cannot provide contemporaneous facts showing the statement was false when made.  *Silicon*

25   *Storage*, 2006 U.S. Dist. LEXIS 14790, at *24, 32–33.[6]

26   _____

27   [6]  CW11 allegedly became a Yahoo! customer after his/her departure in December 2004, and
opined that Panama's algorithm was not "ready" in the second quarter of 2006 (CAC ¶¶ 30,
28   139(a)), but offers no facts to support that opinion, as required by *Daou*.  CW15 is described as an

(Footnote continues on next page.)

1    Plaintiffs point to statements from five confidential witnesses who identified various

2  "problems" with Panama components and related "back end systems."[7]  Allegations about the

3  existence of "problems," however, are insufficient because Plaintiffs do not describe the "problems"

4  with factual particularity, or explain why they could not have been timely solved.  Plaintiffs do not

5  even assert that these "problems" were not timely solved or that they had anything to do with

6  postponing Panama's launch.

7    The Ninth Circuit has repeatedly held that pleading "problems" is insufficient absent a

8  showing that the problems were insurmountable at the time the projection was issued.  *Ronconi*,

9  253 F.3d at 434; *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 930 (9th Cir. 1996) ("[T]he company

10 could have known of problems in the testing procedures, planned to remedy those deficiencies, and

11 still thought it would achieve FDA approval by the estimated date."); *In re Read-Rite Corp. Sec.*

12 *Litig.*, No. C-03-03148-RMW, 2004 U.S. Dist. LEXIS 19319, at *16 (N.D. Cal. Sept. 14, 2004)

13 (dismissing complaint because "plaintiffs do not allege why defendants could not have believed that

14 these defects were minor or solvable"); *In re Juniper Networks, Inc. Sec. Litig.*, No. C-02-0749-SI,

15 2004 U.S. Dist. LEXIS 4025, at *8 (N.D. Cal. Mar. 11, 2004) (complaint failed to "plead specific

16 _____

17 (Footnote continued from previous page.)

18 "employee" who sat in on some meetings where Project Panama was discussed.  CAC ¶ 34.  The
CAC, however, does not mention CW15's job title, or job responsibilities, or anything about the
meetings that CW15 may have attended.  The lack of these facts is fatal.  *Daou*, 411 F.3d at 1015.

19 [7]  The CWs vaguely report that there were "hardware readiness issues," and "integration testing

20 issues," that the "code" for Panama was not written as of December 2005, that projects called
"Cheetah" and "solving the blob" were not complete in February 2006, and that "Project

21 Symphony" was delayed and ultimately "scratched."  CAC ¶¶ 20(a), 23, 26, 29, 31(i), 56(c),
60(c), 79(c), 102(c), 113(c), 131(b), 139(a), 139(a), 158, 163, 164.  Plaintiffs provide no details

22 about these projects or the "issues," and thus do not satisfy Rule 9(b) or the Reform Act.

23 Plaintiffs also point to CW statements about "internal disagreements," a "culture clash" among
engineers at Yahoo! and Overture, and terminations of some engineers.  *Id.* ¶¶ 20, 29, 113(a),

24 123(a).  The CAC, however, does not offer a single fact regarding those disagreements, a culture
clash, or terminations, as required.  *Vantive*, 283 F.3d at 1086–87 (allegations that company "'was

25 suffering serious problems' with its management teams, who 'were distracted' . . . because of
'continual disagreements and in-fighting'" did not support falsity allegations).  Further, Yahoo!

26 evidently overcame these "problems."  Plaintiffs' documents show that the Panama code was

27 complete in May 2006, and that advertisers gave positive feedback on the system during testing.
Ex. 31 at 40–41; Ex. 32 at 4, 10; Ex. 37 at 2, 3.

28

1    facts demonstrating how the problems being experienced translated into the need for [the company]

2    to alter or reduce its publicly issued projections").  Plaintiffs make no such showing here.

3         Plaintiffs allege that CW1, who was in charge of Panama "after October 2005," expressed

4    his opinion to Mr. Nazem in April 2006 that "the August 2006 launch was not going to happen."

5    CAC ¶ 20(a).  This allegation is inadequate for several reasons.  First, Mr. Nazem is not alleged to

6    have made any public prediction about Panama's launch date (or about anything else).  Plaintiffs

7    assert that Mr. Nazem communicated CW1's opinion to other Defendants in weekly meetings, but

8    Plaintiffs do not plead with particularity what, if anything, Mr. Nazem said on this point.  Second,

9    CW1's opinion is not inconsistent with the phase two launch date of "late 3Q," which Plaintiffs

10   allege Yahoo! publicly predicted in May.  Third, the CAC does not allege that CW1 held his

11   opinion in May, when the projection was allegedly made.  Fourth, the CAC pleads no facts showing

12   that CW1's opinion was definitive or that a contrary opinion would lack a reasonable basis.  Fifth,

13   Plaintiffs do not plead how Mr. Nazem responded to CW1's opinion — whether Mr. Nazem agreed,

14   disagreed, or devoted additional resources to meet the alleged August date.

15        Significantly, the "problems" with Panama did not prevent Yahoo! from releasing phase two

16   on October 17, 2006, less than three weeks after the end of the third quarter of 2006.  Ex. 33 at 2.

17   The barely missed rollout shows that Defendants had a reasonable basis to believe the rollout was

18   on target and could overcome any problems or glitches.  *Syntex*, 95 F.3d at 930–31 (prediction not

19   actionable where it was wrong by three weeks).  Plaintiffs are required to show that a difference

20   between what was predicted and what occurred is "not merely the difference between two

21   permissible judgments, but rather the result of a falsehood."  *Id.* at 929 (quotations omitted).  They

22   have not done so here.

23        In summary, Plaintiffs fail to plead the most basic element of a securities fraud case — a

24   false or misleading statement of material fact.  On this ground alone, the entire CAC should be

25   dismissed.

26        **B.      Plaintiffs Also Fail To Plead A "Strong Inference" Of Scienter.**

27        Under the Reform Act, Plaintiffs also have the burden to "'state with particularity facts

28   giving rise to a strong inference that the defendant acted with the required state of mind'" when

1    making allegedly false or misleading statements. *Tellabs*, 127 S. Ct. at 2508 (quoting 15 U.S.C.

2    § 78u-4(b)(2)).  A statement is made with scienter if it is made with an intent to deceive investors or

3    with "deliberate recklessness," a "degree of recklessness that strongly suggests actual intent" to

4    deceive investors. *Silicon Graphics*, 183 F.3d at 977, 979.  It is not enough for a complaint "to

5    allege facts from which an inference of scienter rationally *could* be drawn." *Tellabs*, 127 S. Ct. at

6    2510.  Rather, the particularized factual allegations must give rise to an inference that is "cogent and

7    at least as compelling as any opposing inference one could draw from the facts alleged." *Id.*

8        "A defendant corporation is deemed to have the requisite scienter for fraud only if the

9    individual corporate officer making the statement has the requisite level of scienter." *Apple*,

10   243 F. Supp. 2d at 1023 (citations omitted).  Plaintiffs cannot, therefore, meet their burden by

11   pleading that one person made a false statement at the same time that another officer knew the

12   statement to be false. *See id.*

13       Plaintiffs' circumstantial allegations of scienter are based on (1) statements of CWs and (2)

14   the Individual Defendants' stock sales.  Neither gives rise to any inference of scienter.

**1.    Plaintiffs' CWs do not support an inference of scienter.**

16       Plaintiffs' CWs do not support a "strong inference" that any Defendant made any allegedly

17   false statement with scienter.  None of the CWs on whom Plaintiffs rely to show scienter for the

18   accounting-fraud claim — CWs 3, 6, 8, 9, 10, 14 (CAC ¶¶ 169, 170, 171, 173, 175–78) — is alleged

19   to have had any responsibility for or knowledge about Yahoo!'s accounting decisions generally or

20   revenue recognition specifically. *See* Part II.A.1.a *supra*.  Moreover, none of these CWs is alleged

21   to have ever met or communicated with Ms. Decker or Mr. Semel, the only two Individual

22   Defendants alleged to have endorsed Yahoo!'s financial results. *See* CAC ¶ 224.[8]  These allegations

_____

[8]  Mr. Nazem and Mr. Rosensweig are not alleged to have made or endorsed any of the allegedly
false financial statements (CAC ¶ 224), so they could not have acted with scienter with regard to
them and cannot be liable for them. *In re CornerStone Propane Partners, L.P. Sec. Litig.*, 416 F.
Supp. 2d 779, 783, 788 (N.D. Cal. 2005); *Apple*, 243 F. Supp. 2d at 1028.

CW3 allegedly told Plaintiffs that "Yahoo!'s management" decided to "relax" the click-fraud
detection system, but did not say who in "management" made that decision or that s/he ever told
Ms. Decker or Mr. Semel (or any other executive) about it. CAC ¶¶ 170, 171, 175, 176.  CW8
allegedly told Plaintiffs that Ms. Decker "definitely was aware of the issue" of click fraud.  This

(Footnote continues on next page.)

1   are thus deficient "because they show neither knowledge nor participation by Defendants in the

2   alleged accounting improprieties." *U.S. Aggregates*, 235 F. Supp. 2d at 1075.

3       Plaintiffs do not dispute that Yahoo!'s financial reports were audited throughout the Class

4   Period by PriceWaterhouseCoopers ("PWC"), which found them to have been prepared in

5   conformance with Generally Accepted Accounting Principles ("GAAP"). Plaintiffs do not allege

6   that Defendants lied to PWC or that PWC was complicit in the allegedly fraudulent scheme.

7   Plaintiffs thus present no explanation, much less a "cogent" and "compelling" explanation, for how

8   Defendants were able to obtain a clean audit opinion from PWC while overstating Yahoo!'s

9   revenues by "at least 10%" for ten quarters in a row. The absence of such an explanation is "highly

10  probative of an absence of scienter." *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142,

11  1158 (C.D. Cal. 2007) (internal quotations omitted).

12      Plaintiffs' CWs also do not provide any support for Plaintiffs' claims relating to the

13  optimistic statements made between April 2004 and July 2005, or any of the predictions about

14  Panama that were made between July 2005 and May 2006. Plaintiffs just recycle their allegations

15  about "problems" described by CWs 4, 7, 10, 11, and 12 (CAC ¶¶ 162–65, 174), which do not give

16  rise to even a reasonable inference of falsity as discussed above (Part II.A *supra*), much less a

17  "strong inference" that any forward-looking statement was made "with 'actual knowledge . . . that

18  the statement was false or misleading'" or that any opinion was made with deliberate recklessness

19  towards investors. *Vantive*, 283 F.3d at 1085 (quoting 15 U.S.C. § 78u-5(c)(1)(B)(i)).

20      Plaintiffs' remaining scienter allegations relate to Panama and CW1's alleged statement to

21  Mr. Nazem that Panama would not launch in August. CAC ¶¶ 21, 31(i), 32, 34, 160, 161, 166, 167,

22  168. As discussed above (Part II.A.3), the allegation about CW1's communication with Mr. Nazem

23  does not give rise to an inference of falsity, much less a strong inference that any Defendant

24  predicted a Panama launch date "knowing" it would not be met. Furthermore, Mr. Nazem is not

25  _____

26  (Footnote continued from previous page.)

27  allegation adds nothing because Yahoo! described click fraud in its public filings throughout the
    Class Period. *See, e.g.*, Ex. 10 at 65. CW8 does *not* purport to say that Ms. Decker knew about
    the alleged "dial," 10% revenue overstatement, or reserves. *Id.* ¶¶ 18, 27, 177.

28

1   alleged to have made or participated in making any of the alleged statements listed in the CAC.

2   This shortcoming is fatal to pleading a Section 10(b) claim against Mr. Nazem. *Howard v. Everex*

3   *Sys.*, 228 F.3d 1057, 1061 n.5 (9th Cir. 2000). It is also fatal to pleading a Section 10(b) claim

4   against Yahoo!, because a corporation cannot have scienter unless one of its officers made a false

5   statement with scienter. *Apple*, 243 F. Supp. 2d at 1023.[9]

6          **2.    Plaintiffs' stock-sale allegations do not support an inference of scienter.**

7          Plaintiffs' allegations of stock sales by Individual Defendants do not support an inference

8   (and certainly not a "strong inference") that any Individual Defendant made a false statement with

9   scienter. CAC ¶¶ 180–97.[10] "Insider stock sales are not inherently suspicious; they become so only

10  when the level of trading is 'dramatically out of line with prior trading practices at times calculated

11  to maximize the personal benefit from undisclosed inside information.'" *Vantive*, 283 F.3d at 1092

12  (quoting *Ronconi*, 253 F.3d at 435). As demonstrated in Charts 1–4 included in Appendix A, no

13  such pattern of trading exists here.

14         First, as is clear from Charts 1–4, there is no correlation between the timing of the allegedly

15  false statements and the timing of any Individual Defendant's sales. *See* App. A. In *Vantive*, the

16  Ninth Circuit found that stock sales were not suspicious and affirmed dismissal because the

17  complaint failed to "connect [a defendant's] sales with any particular allegedly misleading

18  statements" or otherwise demonstrate that sales were timed to take advantage of misleading

19  statements. 283 F.3d at 1094. Plaintiffs have made no such showing here, either.[11]

20

21  _____

22  [9] Plaintiffs' generic argument that the Individual Defendants had scienter given their "positions"
    and alleged "access" to unspecified adverse information (CAC ¶¶ 15–18, 155–56, 169–70, 172–
    73, 175) has been consistently rejected. *DSAM Global Value Fund v. Altris Software, Inc.*,

23  288 F.3d 385, 390 (9th Cir. 2002); *Apple*, 243 F. Supp. 2d at 1012.

24  [10] Mr. Nazem's sales are irrelevant because he did not make any of the allegedly false statements.
    *Silicon Graphics*, 183 F.3d at 987–88 (where defendant does not make any of the allegedly

25  misleading statements, his "stock sales do not give rise to a strong inference of deliberate
    recklessness"); *Vantive*, 283 F.3d at 1094 (same); *Apple*, 243 F. Supp. 2d at 1028.

26
    [11] At most, Plaintiffs allege that the Individual Defendants sold stock after Yahoo!'s quarterly

27  earnings announcements (CAC ¶ 180), which is when corporate officers "commonly make stock
    transactions." *Lipton*, 284 F.3d at 1037. The timing of such sales is normal, not suspicious.

28

Second, Plaintiffs' observation that Class-Period sales were large in dollar terms ($879 million) and exceeded pre-Class period sales (*see* CAC ¶¶ 181–88) does not render the Class Period sales "suspicious" for the simple reason that Plaintiffs selected the Class Period to "sweep as many stock sales into their totals as possible, thereby making the stock sales appear more suspicious than they would be with a shorter class period." *Vantive*, 283 F.3d at 1092. As in *Vantive*, "the class period alleged is so long, and the virtually identical allegations recycled throughout the complaint so many times, that it becomes difficult to see how particular stock sales would strengthen allegations that particular statements were uttered with deliberate recklessness at the times they were made." *Id.* at 1093.[12] The Class Period here is almost twice as long as the period criticized by the court in *Vantive*.

Third, Plaintiffs have not alleged facts demonstrating that the stock sales were designed to "maximize the personal benefit" of any Individual Defendant. *Ronconi*, 253 F.3d at 435. None of the Individual Defendants sold stock immediately before any of the four earnings announcements during the Class Period in which Yahoo! missed analyst expectations, and they continued to sell shares after those announcements were made. Rice Decl. ¶¶ 9–12. If the Individual Defendants were committing fraud to maximize personal benefit, one would expect sales *before*, not *after*, negative earnings announcements and associated stock declines. In fact, all of the Individual Defendants sold their stock at average prices far below the Class Period high of $43.66, and three of the four sold at an average price that was below the average daily closing price of $33.77 during the Class Period. CAC ¶¶ 11, 182, 184, 186, 188; Rice Decl. ¶ 7. There is no strong inference of

---

[12] Plaintiffs distort their presentation of the Individual Defendants' stock sales in many other ways. For example, Plaintiffs exclude vested options in calculating the percentage of shares sold, even though the Ninth Circuit has repeatedly ruled that vested options must be included. *Vantive*, 283 F.3d at 1092 n.12; *Silicon Graphics*, 183 F.3d at 986. When vested options are included, the accurate percentages are: 49.3% for Semel; 68.1% for Rosensweig; 58.1% for Nazem; and 35.6% for Decker (Rice Decl. ¶¶ 3(e), 4(e), 5(e), 6(e)) rather than the significantly higher percentages listed by Plaintiffs. *See* CAC ¶¶ 15–18. Plaintiffs also use charts that illustrate the "dollar volume" of sales as opposed to the number of shares sold. *Id.* Their charts make it look as though the Individual Defendants sold more stock as Yahoo!'s price increased. Charts 1–4, which accurately illustrate the amount of shares sold, show that the Individual Defendants' trading patterns were consistent during the Class Period, and not tied to an increasing stock price. *See* Appendix A.

1    scienter where, as here, executives "miss the boat" by selling stock at prices far below the class

2    period high.  *Vantive*, 283 F.3d at 1094.[13]

3        Fourth, as illustrated in Charts 1–4, there was no coordinated selling of stock by Individual

4    Defendants — they generally sold at different times throughout the Class Period.  The absence of a

5    pattern further undermines Plaintiffs' theory (*see* CAC ¶¶ 2–3) that the Individual Defendants

6    conspired to inflate Yahoo!'s stock price to sell at the highest price possible.  *See, e.g.*, *Vantive,*

7    283 F.3d at 1093 (no strong inference of scienter where "other equally (or more) knowledgeable

8    defendants" did not sell at the same time); *cf. Daou*, 411 F.3d at 1024 (stock sales "highly suspect

9    and indicative of coordinated selling among defendants" where complaint alleged that "98% of all

10   insider sales . . . took place on only two trading days").

11       Finally, more than half of the Class Period stock sales occurred in 2004.  Rice Decl. ¶ 8.

12   Such early class period sales made long before an alleged fraud is revealed do not support an

13   inference of scienter.  *See Vantive*, 283 F.3d at 1093; *accord In re Buca Inc. Sec. Litig.*, No. 05-

14   1762-DWF-AJB, 2006 U.S. Dist. LEXIS 75224, at *41–42 (D. Minn. Oct. 16, 2006); *In re Credit

15   Acceptance Corp. Sec. Litig.*, 50 F. Supp. 2d 662, 677 (E.D. Mich. 1999).

16       In sum, the alleged stock sales exhibit no unusual or suspicious pattern that, when viewed in

17   concert with all facts pled in the CAC, supports a "cogent" and "compelling" inference that any

18   Defendant intended to defraud investors.  *Tellabs*, 127 S. Ct. at 2510.  The CAC should, therefore,

19   also be dismissed for failure to plead a strong inference of scienter.

20   **C.    The Forward-Looking Statements Are Not Actionable For Additional Reasons.**

21       The forward-looking statements in the CAC cannot support a Section 10(b) claim for the

22   additional reason that they are protected by the Reform Act's Safe Harbor, which provides that

23   forward-looking statements are not actionable where they are identified as forward-looking and

24   _____

25   [13]  All of the Individual Defendants maintained substantial Yahoo! holdings at the end of the
     Class Period.  Rice Decl. ¶¶ 3(c), 4(c), 5(c), 6(c).  The value of three Individual Defendants'

26   holdings *increased* over the course of the Class Period.  *Id.* ¶¶ 3(b), (d); 5(b), (d); 6(b), (d).  They,
     like any other owner of Yahoo! stock, suffered "losses" as Yahoo!'s stock declined, a fact

27   "negating" scienter.  *Ronconi*, 253 F.3d at 435–36; *see also Hansen*, 527 F. Supp. 2d at 1160
     (quoting *Vantive*, 283 F.3d at 1092); *Versant III*, 2001 U.S. Dist. 25009, at *16–17.

28

accompanied by meaningful cautionary language. *Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1132 & n.3 (9th Cir. 2004) (citing 15 U.S.C. § 78u-5(c)). These statements also are protected by the bespeaks-caution doctrine. *See id.*

Defendants' optimistic statements about the prospects of Yahoo!'s search marketing business were made in written press releases (*see, e.g.*, CAC ¶¶ 49, 61, 103, 114), and orally in conference calls with analysts. *See, e.g.*, *id.* ¶¶ 50, 62, 76, 82, 95, 104, 115. The press releases identified the statements as forward-looking, and warned that actual results might differ because of risks and uncertainties, including "performance of the Company's recently acquired businesses"; "risks related to the integration of recent acquisitions"; and "the ability to adjust to changes in personnel, including management changes." *See, e.g.*, Exs. 39–42 at 3. The conference call moderators invoked the Safe Harbor and referred investors to Yahoo!'s SEC reports for risk factors.[14] Yahoo!'s SEC reports, in turn, advised investors that the acquisition of Overture's search marketing business could result in problems and harm Yahoo!'s business. These problems included "the difficulty of assimilating the operations and personnel of [] acquired companies with and into Yahoo!'s operations"; "the failure to further successfully develop acquired technology"; "the impairment of relationships with employees of the acquired companies"; and the potential loss of "key employees from Overture."[15]

The statement about the predicted launch of Project Panama made at the May 17, 2006 analyst day (CAC ¶ 143) was identified as forward-looking and pointed investors to SEC reports that contained meaningful cautionary language. Ex. 31 at 1, 90. Those SEC reports warned investors that "significant changes to our architectures, including moving to completely new architectures and systems," could be "technologically challenging to develop and implement." Ex. 14 at 27; Ex. 16 at 44. Yahoo!'s SEC reports also cautioned investors that system "upgrades and improvements will require a dedication of resources and in some cases are likely to be complex. If we are unable to adapt our systems in a timely manner to accommodate our growth, our business

---

[14]  Ex. 22 at 132; Ex. 23 at 119; Ex. 24 at 106; Ex. 25 at 91; Ex. 26 at 77; Ex. 27 at 61; Ex. 28 at 1.
[15]  Ex. 7 at 31–32, 36; Ex. 8 at 34, 38; Ex. 9 at 36, 41; Ex. 10 at 17–18; Ex. 11 at 38–39; Ex. 12 at 36–37; Ex. 13 at 35–36; Ex. 14 at 24.

1    may be adversely affected." Ex. 14 at 23–24; Ex. 16 at 44.

2          Under the Safe Harbor and the bespeaks-caution doctrine, these warnings protect Defendants

3    from liability relating to forward-looking statements about Project Panama. *See Clorox*, 353 F.3d

4    at 1133 (affirming dismissal where "sufficient warnings accompanied the timetable estimate").

5          **D.    Plaintiffs Also Fail To Plead Loss Causation.**

6          Plaintiffs also fail to plead loss causation, i.e. the "causal connection between the material

7    misrepresentation and the loss" alleged, for all their claims. *Dura*, 544 U.S. at 342. To plead loss

8    causation, a complaint must plead facts showing "that the misstatement or omission concealed

9    something from the market that, when disclosed, negatively affected the value of the security."

10   *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 (2d Cir. 2005). This can be done by showing a

11   "corrective disclosure regarding the falsity" or the "materialization of a risk" that was previously

12   concealed. *Id.* at 173, 175.[16]

13         Plaintiffs' accounting-fraud claim contrasts sharply with the loss causation allegations

14   approved by the Ninth Circuit in *Daou*, where the stock dropped after the company disclosed that it

15   had improperly recognized revenue. 411 F.3d at 1026. Here, there has been no such disclosure.

16   Aside from Plaintiffs, nobody (including PWC) has ever questioned Yahoo!'s Class-Period

17   financial results. Plaintiffs thus fail to plead a "causal connection between the material

18   misrepresentation and the loss" alleged. *Dura*, 544 U.S. at 342.

19         Plaintiffs try to indirectly plead loss causation by pointing to Yahoo!'s stock drop after

20   reports on January 18 and July 18, 2006, of increasing traffic acquisition costs associated with

21   Yahoo!'s replacement of "poor traffic affiliates." CAC ¶¶ 10, 231(a), 233. Plaintiffs, however,

22   never link these rising costs to their "dial" allegations and overlook that Yahoo! had repeatedly

23   advised investors throughout the entire Class Period that these costs were rising and would continue

24

25

26   _____

[16] The Ninth Circuit has assumed, "without deciding — that Rule 9(b) governs" the pleading of
27   loss causation allegations. *Berson v. Applied Signal Tech., Inc.*, No. 06-15454, --- F.3d---, 2008
     U.S. App. LEXIS 11982, at *18–19 (9th Cir. June 5, 2008).
28

1   to rise.[17]  A complaint cannot show loss causation where, as here, a stock drop allegedly follows the

2   materialization of a previously disclosed and known risk.  *Lattanzio v. Deloitte & Touche LLP*,

3   476 F.3d 147, 158 (2d Cir. 2007); *Lentell*, 396 F.3d at 177.

4         For the same reasons, Plaintiffs do not plead loss causation for their Panama fraud theory.

5   Plaintiffs allege that their losses were caused by the stock drop following Yahoo!'s disclosure that it

6   "was delaying the implementation of Project Panama."  CAC ¶ 231(b).  There was no such

7   announced delay before the January 18, 2006 stock drop.  With regard to the delay of Panama

8   announced on July 18, 2006, Yahoo! explained that it was "prudent to add some extra time to our

9   original estimates for the commercial launch . . . to collect feedback from our advertisers on the

10  timing and cause them as little disruption as possible" "given the complexity and importance of

11  going to market with an application of this scale."  Ex. 32 at 4–5.  In the annual report that it filed

12  on March 3, 2006, Yahoo! warned that its business could be adversely affected if its upgrades were

13  not "adequately tested," and if Yahoo! failed to "adapt [its] systems in a timely manner."  Ex. 14

14  at 23; Part II.C *supra*.  Yahoo!'s risk disclosures thus provided "substantial indicia" of the risks that

15  ultimately materialized.  The CAC, therefore, fails to plead loss causation.  *Lattanzio*, 476 F.3d

16  at 158; *Lentell*, 396 F.3d at 177.

17  **III.    PLAINTIFFS FAIL TO STATE A SECTION 20(a) CLAIM.**

18        Plaintiffs also fail to plead a claim for control-person liability under Section 20(a) of the

19  Exchange Act for two independent reasons.  First, Plaintiffs do not plead a valid Section 10(b) claim

20  against any Defendant, so there can be no secondary liability for any Defendant under Section 20(a).

21  *Lipton*, 284 F.3d at 1035 n.15.  Second, Plaintiffs fail to "plead the circumstances of the control

22  relationship with particularity."  *In re Splash Tech. Holdings, Inc. Sec. Litig.*, No. C-99-00109-SBA,

23  2000 U.S. Dist. LEXIS 15369, at *83–84 (N.D. Cal. Sept. 29, 2000).  Plaintiffs allege no facts

24  showing that Mr. Nazem, the CTO, or Mr. Rosensweig, the COO, had any responsibility for

25  financial statements or accounting.  Rather, Plaintiffs rely on titles and on conclusory allegations

26

27  [17]  *See, e.g.* Ex. 5 at 31; Ex. 10 at 34; Ex. 14 at 41  Stock analysts repeated that information.  *See, e.g.*, Ex. 29 at 37–38; Ex. 31 at 77; Ex. 34 at 2; Ex. 35 at 2.

28

1    about "involvement in the day-to-day operations."  CAC ¶ 258.  This is insufficient.  *Paracor Fin.,*

2    *Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1162–63 (9th Cir. 1996); *In re Metawave Commc'ns Corp.*

3    *Sec. Litig.*, 298 F. Supp. 2d 1056, 1091 (W.D. Wash. 2003) (control-person liability not pleaded

4    where defendant's position was not alleged to involve revenue recognition, inventory accounting, or

5    issuance of financial statements).

6    **IV.    PLAINTIFFS FAIL TO STATE A SECTION 20A CLAIM.**

7         Plaintiffs' claim against the Individual Defendants for contemporaneous insider trading

8    under Section 20A (*see* CAC ¶¶ 260–70) fails for at least two independent reasons.  First, Plaintiffs

9    do not plead a predicate violation of the Exchange Act.  *VeriFone*, 11 F.3d at 872.  Plaintiffs also

10   fail to plead a wrongful contemporaneous trade.  Plaintiffs identify seven contemporaneous trades in

11   the CAC, but fail to identify any specific "material nonpublic information" in the possession of any

12   Individual Defendants at the time of those specific trades (*VeriFone*, 11 F.3d at 872) and plead no

13   facts showing that they "knowingly" used that information in making the decision to sell.  *Johnson*

14   *v. Aljian*, 394 F. Supp. 2d 1184, 1198–99 (C.D. Cal. 2004), *aff'd*, 490 F.3d 778 (9th Cir. 2007).

15   Plaintiffs' Section  20A claim, therefore, fails as a matter of law.  *Id.*; *VeriFone*, 11 F.3d at 872;

16   *Berger v. Ludwick,* No. C-97-0728-CAL, 2000 U.S. Dist. LEXIS 12756 (N.D. Cal. Aug. 17, 2000).

17                                            **CONCLUSION**

18        For all of the foregoing reasons, Defendants respectfully request that this Court dismiss the

19   CAC without leave to amend.

20                                  MORRISON & FOERSTER LLP

21   Dated:  June 20, 2008

22                                  By:  /s/ Judson Lobdell [e-filing signature]
                                         Attorneys for Defendants

23

24

25

26

27

28

1

## ECF ATTESTATION

2

3    I, Mark R.S. Foster, am the ECF User whose ID and Password are being used to file:

4    **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS**
     **PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT; SUPPORTING**
5    **MEMORANDUM OF POINTS AND AUTHORITIES**

6    In compliance with General Order 45, X.B., I hereby attest that Judson Lobdell has

7    concurred in this filing.

8        Dated:  June 20, 2008            MORRISON & FOERSTER LLP

9                                          By:/s/ Mark R.S. Foster [e-filing signature]

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# APPENDIX A

**CHARTS OF INDIVIDUAL DEFENDANT STOCK SALES**[*]

---

[*] *See* Foster Decl. ¶ 40.

**Chart 1**

**Decker: Shares Sold & Stock Price By Month**

## Chart 2
### Nazem: Shares Sold & Stock Price By Month

Class Period (April 8, 2004 - July 18,

## Chart 3
### Rosenweig: Shares Sold & Stock Price By Month

s

Chart 4
Semel: Shares Sold & Stock Price By Month
Class Period (April 8, 2004 - July 18,
# Shares Sold
5,000,000
4,500,000
4,000,000
3,500,000
3,000,000
2,500,000
2,000,000
1,500,000
1,000,000
500,000
0
Stock Price
$50
$45
$40
$35
$30
$25
$20
$15
$10
$5
$0
Mar-04
Apr-04
May-04
Jun-04
Jul-04
Aug-04
Sep-04
Oct-04
Nov-04
Dec-04
Jan-05
Feb-05
Mar-05
Apr-05
May-05
Jun-05
Jul-05
Aug-05
Sep-05
Oct-05
Nov-05
Dec-05
Jan-06
Feb-06
Mar-06
Apr-06
May-06
Jun-06
Jul-06
Aug-06
Shares Sold
Stock Price
Class Period